**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

_____

|  |  |  |
|---|---|---|
| TOWN OF MORRISTOWN, | : | TAX COURT OF NEW JERSEY |
|  | : | DOCKET NO.:  005100-2024 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : | Approved for Publication |
| MORRIS COUNTY BOARD OF | : | In the New Jersey |
| TAXATION, | : | Tax Court Reports |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

_____:

Decided:  July 24, 2024

Emil H. Philibosian and Shaun S. Peterson for plaintiff, Town of Morristown (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys).

Michelline Capistrano Foster, Deputy Attorney General for defendant, Morris County Board of Taxation (Matthew J. Platkin, Attorney General of New Jersey, attorney).

NOVIN, J.T.C.

This shall constitute the court's opinion on defendant, Morris County Board of Taxation's (the "Board") motion for summary judgment.  At issue is whether plaintiff, Town of Morristown ("Morristown") is precluded from challenging the Board's 2024 final Morris County equalization table because Morristown failed to raise an objection to the 2024 preliminary Morris County equalization table.  The Board further contends that if the court determines Morristown appropriately

1

instituted this action, it is nonetheless entitled to summary judgment, because Morristown cannot demonstrate that the Board's adoption of the 2024 final Morris County equalization table was arbitrary and capricious.

For the reasons stated more fully below, the court denies the Board's motion for summary judgment.

## I.   **Findings of Fact**

Pursuant to R. 1:7-4(a), the court makes the following findings of fact and conclusions of law based on the submissions of the parties.

On or about October 11, 2023, Morristown's municipal tax assessor submitted Morristown's 2023 tax year added assessment list to the Board.  The list included an added assessment on the property identified on Morristown's tax map as block 3701, lot 13.01, commonly known as 175 Morris Street ("the subject property").[1]

On or about November 29, 2023, a complaint was filed in the Tax Court bearing the caption, Morris Street 2015 Urban Renewal, LLC v. Morristown Town, under docket number 010256-2023, challenging the subject property's 2023 tax year added assessment.[2]

---

[1]  In its opposition to the motion, Morristown asserts that "the revaluation company mistakenly issued an [added] assessment to the subject property despite the fact that the [Long Term Tax Exemption] Financial Agreement was already in place."

[2]  The certification of Patricia Marsh, the Board's Tax Administrator (the "CTA"), asserts that the "Board has no a [sic] record of having received a copy of this complaint."  However, the court's review of the eCourts case jacket under docket

2

On January 4, 2024, the CTA emailed all Morris County municipal tax assessors whose taxing districts had implemented a revaluation or reassessment effective for 2024 tax year, a Page 8 formula form for their completion.[3]

On or about January 8, 2024, Morristown's municipal tax assessor completed, signed, and certified Morristown's 2024 tax list to the Board. Morristown's 2024 tax list reflected the subject property as exempt from local property tax. In addition, Morristown's tax assessor submitted a certification of its taxable and exempt local property for the 2024 tax year reflecting a total value of land and improvements of $4,784,035,300 (excluding "2nd class RR") and $55,063 for miscellaneous taxable property.

On or about January 18, 2024, the Board certified that Morristown had land and improvements having a "net valuation taxable" of $4,784,090,363 ($4,784,035,300 + $55,063) for the 2024 tax year.

On January 24, 2024, Morristown's municipal tax assessor submitted a

_____

number 010256-2023 discloses that a notice of the filing of the complaint was generated by eCourts to pmarsh@co.morris.nj.us on November 29, 2023, at 2:33 p.m.

[3] The Page 8 formula is designed to produce a "harmonious county equalization as between revaluing and non-revaluing districts." Willingboro Twp. v. Burlington County Board, 62 N.J. 203, 222 (1973). The formula divides "the aggregate new assessments of the revalued district by the Director's equalized true valuations . . . thereby producing a wholly new ratio, which, when divided into the aggregate new assessments, yields a county equalization true value aggregate for the district. . . ." Ibid.

completed Page 8 form. On the Page 8 form, Morristown's municipal tax assessor calculated its new average ratio of aggregate assessed value to aggregate true value ratio as 110.74% for the 2024 tax year.[4]

On or about January 29, 2024, the CTA submitted copies of the completed Page 8 forms to the New Jersey Division of Taxation for all Morris County taxing districts that had implemented a revaluation or reassessment for the 2024 tax year. Morristown's municipal tax assessor's completed Page 8 form was included in that submission.

On or about February 1, 2024, the CTA prepared and submitted the 2024 preliminary Morris County equalization table to the Board and mailed copies of same to the tax assessor of each Morris County taxing district and to the Division of Taxation (the "2024 preliminary Morris County equalization table"). In accordance with N.J.S.A 54:3-17, on or about February 1, 2024, a copy of the 2024 preliminary Morris County equalization table was posted at the Morris County Courthouse. The 2024 preliminary Morris County equalization table identified Morristown's 2024 tax year ratio of aggregate assessed value to aggregate true value as 110.74%, and its aggregate assessed value as $4,784,035,300.

---

[4] The Board asserts that Morristown's tax assessor did not inform it of the pendency of tax appeal challenging the subject property's 2023 added assessment. Morristown disputes this assertion, stating that on or about November 29, 2023, a copy of the complaint was served on the Board.

The 2024 preliminary Morris County equalization table contains the following provision:

> [a] hearing will be held by the Morris County Board at 10:00 A.M. 30 Schuyler Place, Morristown, New Jersey on February 15, 2024[,] at which time assessors and representatives of the governing bodies may appear and be heard in regard to the ratio and valuations fixed for their own or any other taxing district . . . Objections are to be made on this date. The valuations, as finally determined after hearing, will be the basis for the apportionment of State, County, and School taxes, pursuant to RS 54:3-19 and RS 54:4-49. The Preliminary Equalization Table will be presented on February 15, 2024. Objections, if any, will be considered on that date.

On February 15, 2024, neither Morristown's municipal tax assessor nor any other representative of Morristown appeared before the Board to offer an objection to the 2024 preliminary Morris County equalization table. In addition, no other municipalities objected to the 2024 preliminary Morris County equalization table, or to Morristown's reported ratio of aggregate assessed value to aggregate true value.

Accordingly, on February 15, 2024, the Board certified and adopted the final Morris County equalization table for the 2024 tax year ("2024 final Morris County equalization table"). The 2024 final Morris County equalization table reflected Morristown's aggregate assessed value as $4,784,035,300 and Morristown's ratio of aggregate assessed value to aggregate true value as 110.74%. In addition, the 2024 final Morris County equalization table stated the following:

> N.J.S.A. 54:3-18 as amended, requires the County Board

5

to complete its equalization of property valuation in the taxing districts before the tenth day of March. Pursuant to R.S. 54:3-19, as amended, one certified copy of such equalization table, as confirmed, shall be transmitted to each of the following: The Director of Division, the Tax Court of N.J. and to each Taxing District in the County.

On or about March 20, 2024, Morristown's municipal tax assessor telephoned the CTA and notified her that the subject property was afforded a local property tax exemption under the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22, and thus, erroneously included by the revaluation company in Morristown's 2023 added assessment list. Therefore, Morristown's Page 8 formula calculation, and ratio of aggregate assessed value to aggregate true value, were incorrect. During said telephone discussion, Morristown's municipal tax assessor apparently acknowledged having received the 2024 preliminary Morris County equalization table more than ten days prior to the February 15, 2024 hearing.

On March 14, 2024, a Stipulation of Settlement was filed with respect to the subject property in the matter captioned Morris Street 2015 Urban Renewal, LLC v. Morristown Town, under docket number 010256-2023 (the "Stipulation of Settlement").[5] The Stipulation of Settlement recites, in part, that "[t]he parties agree that the [s]ubject [p]roperty is exempt from added assessment by virtue of the long

---

[5] The Stipulation of Settlement was initially filed on March 14, 2024. However, on March 22, 2024, a Deficiency Notice was generated by the court and a revised Stipulation of Settlement was filed on March 26, 2024.

term tax exemption granted by the [d]efendant [Morristown] to the Plaintiff pursuant to the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1, et seq., and that the Added Assessment was inadvertently imposed."

On March 27, 2024, the Tax Court entered a Judgment reciting that the subject property's pro-rated added assessment for the 2023 tax year shall be $0.00.

On March 28, 2024, Morristown filed a complaint with the Tax Court (the "Complaint") challenging the "Preliminary Equalization Table for the County of Morris for the Year 2024" and Morristown's reported "Real Property Ratio of Aggregate Assessed to Aggregate True Value," under N.J.S.A. 54:51A-4a.[6]

On June 7, 2024, the Board filed the instant motion for summary judgment. The Board contends that Morristown's "challenge to the [2024] final Morris County equalization table is untimely because Morristown failed to first timely inform the . . . Board of its objection to the [2024] preliminary [Morris] [C]ounty equalization table." Moreover, the Board asserts that the court should read the "hearing" language, under N.J.S.A. 54:51A-4a, as referring to the Board's February 15, 2024 hearing, and not the hearing to be conducted by the Tax Court on review of the final county equalization table. In sum, the Board maintains that because Morristown did

---

[6] On July 19, 2024, the court granted Morristown's motion for leave to amend the Complaint, under R. 8:3-8(a). Morristown's proposed amended Complaint recites that it challenges the "Final Equalization Table for the County of Morris for the Year 2024" (the "Amended Complaint").

not object to the 2024 preliminary Morris County equalization table, its inaction should preclude it from challenging the 2024 final Morris County equalization table before the Tax Court.

In addition, the Board argues that Morristown's Complaint should be deemed untimely filed. Because Morristown's Complaint sought to review, revise, and correct the "Preliminary" equalization table, and not the "Final" equalization table, the Board contends that Morristown's Complaint was untimely, under N.J.S.A. 54:51A-4a.[7] The Board argues that the 2024 preliminary Morris County equalization table was mailed to Morristown's municipal tax assessor on February 1, 2024, therefore, any action seeking review of the 2024 preliminary Morris County equalization table had to be filed on or before March 22, 2024.[8] However, because Morristown's Complaint was filed on March 28, 2024, it should be viewed as untimely thereby barring relief.

Finally, the Board argues that even if Morristown's Complaint and Amended Complaint are deemed timely, Morristown cannot show that the Board's adoption and confirmation of the 2024 final Morris County equalization table was arbitrary and capricious. Accordingly, the Board argues that Morristown's Complaint and

---

[7] However, under its preliminary statement in support of its motion for summary judgment, the Board acknowledges and admits that Morristown has filed a challenge to the 2024 "final Morris County equalization table" (emphasis added).

[8] Computed as follows, 45 days from February 1, 2024, plus 5 calendar days to effectuate mailing, under R. 1:3-3.

Amended Complaint must be dismissed.

In response, Morristown argues that its challenge to the 2024 final Morris County equalization table is timely, and that it has complied with the requirements of R. 8:4-2(a)(1), N.J.S.A. 54:51A-4a, and N.J.S.A. 54:51A-5b.[9] Specifically, Morristown argues that, under N.J.S.A. 54:51A-4a, the Tax Court is authorized to review "[a] county equalization table . . . on complaint of any taxing district or taxpayer in the county. . . ." N.J.S.A. 54:51A-4a.

Morristown emphasizes that there is no rule, statutory requirement, or regulation requiring its tax assessor to appear and lodge an objection to the 2024 preliminary Morris County equalization table, as a precondition to filing a complaint with the Tax Court challenging the 2024 final Morris County equalization table. Rather, the only rule and statutory prerequisites for the court's review of a final county equalization table are that: (i) the complaint must be filed within 45 days after the adoption or promulgation of the final county equalization table; (ii) the complaint must be served on the county board of taxation, the Chief Executive Officer and the Clerk of the Board of Chosen Freeholders, and the clerk of every taxing district in the county; (iii) the court's review shall not suspend the apportionment of moneys or collection of taxes from the taxing district; (iv) that the hearing shall be conducted

---

[9] Morristown's brief in opposition to the Board's motion for summary judgment refers to the 2024 final Morris County equalization table, not the 2024 preliminary Morris County Equalization table.

in the county; (v) 5 days' advance written notice of the Tax Court's hearing must be given to the governing body of each taxing district in the county; and (vi) the hearing shall be conducted and a decision rendered on or before September 10, annually. R. 8:4-2(a)(1); N.J.S.A. 54:51A-4a; N.J.S.A. 54:51A-5b.

Morristown highlights that the 2024 final Morris County equalization table was adopted by the Board on February 15, 2024. Therefore, its Complaint and Amended Complaint were timely and comport with R. 8:4-2(a)(1) and N.J.S.A. 54:51A-4a. Morristown emphasizes that under R. 4:9-3, "[w]henever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth . . . in the original pleadings, the amendment relates back to the date of the original pleading. . . . " R. 4:9-3; see also Prime Accounting Dept. v. Twp. of Carney's Point, 212 N.J. 493 (2013); R. 8:3-8(c)(1). Thus, Morristown maintains that its Amended Complaint relates back to the date of filing of the Complaint, or March 28, 2024, and was therefore, timely filed within 45 days of the adoption of the 2024 final Morris County equalization table.[10]

Moreover, Morristown asserts that it was unable to lodge an objection to the 2024 preliminary Morris County equalization table or to the 2024 final Morris County equalization table on February 15, 2024, as the tax appeal contesting the

---

[10] On July 19, 2024, the court granted Morristown's motion for leave to amend the Complaint, under R. 8:3-8(a), and ordered that, Morristown's Amended Complaint shall relate back to the date of the Complaint, under R. 4:9-3 and R. 8:3-8(c)(1).

subject property's 2023 added assessment remained unresolved. Rather, it was not until March 14, 2024, that the Stipulation of Settlement was filed with the court, and not until March 27, 2024, that the Tax Court entered judgment confirming that the subject property was exempt from the 2023 tax year added assessment.[11]

## II. Conclusions of Law

### A. Summary Judgment

Summary judgment is intended to "'serve two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a bona fide cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2.]

---

[11] The Stipulation of Settlement was initially filed with the court on March 14, 2024. However, a Deficiency Notice was generated by the court on March 22, 2024, and a revised Stipulation of Settlement was filed on March 26, 2024.

11

In Brill, our Supreme Court adopted the federal approach to resolving motions for summary judgment, in which "the essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:

> [W]hen deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 536.]

In considering all the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). A court charged with "deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, . . . [i]nstead, the

motion court draws all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co., 225 N.J. at 480 (internal citations omitted). Thus, the moving party bears the burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" with respect to the claims being asserted. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196 (1961).

"By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529. However, when the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Liberty Lobby, Inc., 477 U.S. at 252).

Applying the foregoing standards to the Board's motion, and having reviewed the pleadings, material statements of fact, certifications, and exhibits, the court finds that no genuine issues of material fact exist regarding the court's subject matter jurisdiction, as that issue involves an interpretation of applicable law, and therefore,

13

is ripe for partial summary judgment.[12]

B. Equalization

Equalization has comprised some part of our local property tax system since June 10, 1799. Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. 371, 382 (1955). Equalization is "[t]he process by which an appropriate governmental body attempts to ensure that property under its jurisdiction is appraised equitably at market value or as otherwise required by law." Division of Taxation, Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessors, 607 (October 2018) (quoting Byrl N. Boyce, Ph.D., Real Estate Appraisal Terminology (1980)).

The goal of equalization is to "ensure[] that that all properties within a district and all districts within their counties and the State bear the same relationship to market value for purposes of State School Aid distribution and county tax apportionment." Ibid. The equalization process "is not required to be perfect, [rather] [i]t is recognized as a reasonable approximation, calculated to achieve the same relative valuations among the taxing districts so as to distribute the county tax burden fairly and to offset competitive undervaluation by local assessors." Carteret v. Div. of Tax Appeals, 40 N.J. Super. 439, 446-447 (App. Div. 1956). Thus, the

---

[12] However, the court finds that whether adoption of the 2024 final Morris County equalization table is arbitrary, capricious, unreasonable, incorrect, or plainly unjust, and impresses upon Morristown a substantially excessive share of the county tax burden, is a disputed material fact. Therefore, the court finds that issue is not ripe for summary judgment.

14

"need for an equalization table and for a determination of the ratio of assessment to true value for school aid and county tax distribution stems from the failure of local assessors to assess property in their municipalities at true value or at a uniform percentage thereof uniformly applied by all municipalities." Town of Kearny v. Div. of Tax Appeals, 35 N.J. 299, 303 (1961). In sum, equalization attempts to minimize any unfair distribution of the state or county tax burden, notwithstanding any deviations that may have existed in the original assessment practice.

On or before October 1st each year, the Director of the New Jersey Division of Taxation (the "Director") is required to "promulgate a table of equalized valuations to be used in the calculation and apportionment of distributions [of school aid] pursuant to the State School Aid Act of 1954" (the "Director's ratio"). N.J.S.A. 54:1-35.1. See also N.J.S.A. 54:1-35 to -35.6. As comprehensively explained by Judge Crabtree, the Director's ratio is calculated by,

> [u]sing sales recorded in the 12 months ended June 30 of the computation year, a ratio is separately calculated for each of the four property classes: vacant land (class 1), one-to-four family residences (class 2), class 3a (farmland regular) and all others (commercial, industrial, multi-family apartments) (class 4). This ratio (a class ratio) is weighted, i.e., it is determined by adding all the assessments of the properties sold in the class, adding all the sale prices in the class, and dividing the former by the latter.
>
> The next step is to determine the aggregate (or equalized) true value of the properties in each class. This is accomplished by dividing the aggregate assessments in

each class by the class ratio. The aggregate true values of all classes are then summed and divided into the aggregate assessments of all classes of properties to produce the weighted, classified ratio for the computation year. Then that ratio is applied to the aggregate assessments to produce the aggregate or equalized true value for the computation year.

Finally, the equalized true value for the computation year is averaged with the prior year's true value (adjusted for added and omitted assessments), calculated in the same fashion. The aggregate assessments for the computation year are then divided by such average true value to produce the general average ratio. This is the ratio promulgated by the Director for school aid distribution purposes as at October 1 of the computation year for the following school year. The same ratio is used by most county boards, including the Essex County board, in the equalization of true values for county tax apportionment purposes for the tax year next following the computation year.

[Bloomfield Twp. v. Essex Cty. Tax Adm'r, 12 N.J. Tax 543, 546-547.]

In general, most county boards of taxation adopt the Director's ratio, as the ratio of assessed to true value for each taxing district in the county. See East Windsor v. Div. of Tax Appeals, 89 N.J. Super. 282, 288 (App. Div. 1965) (concluding that "the Director's table is ordinarily accepted by the county board as prima facie correct and consequently usable in the achievement of its statutory aim.").

C.   County equalization table; Page 8 formula

In New Jersey, each county board of taxation tax administrator is charged with the responsibility to "annually ascertain and determine, . . . the general ratio or

percentage of true value at which the real property of each taxing district is . . .

assessed according to the tax lists . . . before the board." N.J.S.A. 54:3-17. Annually,

on or before March 1,[13] each county tax administrator must prepare and submit to

its county board of taxation, a preliminary county equalization table for each taxing

district within the county containing:

> (a) The . . . taxable value of real property in the county;
> (b) The aggregate assessed value of the real property, exclusive of class II railroad property;
> (c) The ratio of aggregate assessed to aggregate true value of the real property, exclusive of class II railroad property;
> (d) The aggregate true value of the real property, exclusive of class II railroad property;
> (e) The amount by which the valuation in item (b) should be increased or decreased in order to correspond to item (d);
> (f) The aggregate assessed value of machinery. . . and equipment and all other personal property used in business;
> (g) The aggregate true value of machinery, . . . and equipment and all other personal property used in business;
> (h) The aggregate equalized valuation of machinery, . . . and equipment and all other personal property used in business, computed by multiplying the aggregate true value thereof by the lower of (1) that percentage level established pursuant to law for expressing the taxable value of real property in the county, or (2) the average ratio of assessed to true value of real property as promulgated by the director on October 1 of the pretax year, pursuant

---

[13] A county Board participating in the demonstration program, under N.J.S.A. 54:1-104, must generate the preliminary equalization table on or before May 15, annually. N.J.S.A. 54:3-17.

to chapter 86, laws of 1954 [N.J.S.A. 54:1-35.1 et seq.], for State school aid purposes, as the same may have been modified by the Tax Court;

(i) The amount by which the valuation in item (f) should be increased or decreased in order to correspond to item (h).

[N.J.S.A. 54:3-17.[14]]

Thus, the county equalization tables set forth the aggregate assessed value and true value of all real property in each county, and the ratio of assessed value to true value of all real property within each taxing district in each county. Importantly however, the "equalization function of the county boards does not in any way affect individual tax assessment against property owners. Those are required to be separately revised and corrected administratively by the county boards after receipt of the lists from the local assessors." Willingboro Twp., 62 N.J. at 208 (citing N.J.S.A. 54:4-46). Nonetheless, our courts permit "in a proceeding involving a challenge to a county equalization table, examination of the propriety of excluding or including sales in the calculation of the ratio used to equalize assessed values." Secaucus Town v. Hudson Cty. Bd. of Taxation, 17 N.J. Tax 215, 231 (Tax 1998); see also Town of Kearny, 35 N.J. 299; East Windsor Twp., 89 N.J. Super. 282 (App. Div. 1965).

---

[14] The county tax administrator is required to annually mail a copy of the preliminary county equalization table, on or before March 1, to "the [tax] assessor of each district, and to the Division of Taxation, and [shall cause it to] be posted at the courthouse." N.J.S.A. 54:3-17.

Following the mailing and posting of the preliminary county equalization table, each county board of taxation "shall meet annually" and during "the meeting a hearing" is afforded to the taxing districts and municipal tax assessors, for the purpose of reviewing the preliminary county equalization table. N.J.S.A. 54:3-18. The hearing must be conducted, and the equalization table confirmed and adopted by the county board of taxation before March 10, annually.[15] Ibid. At the hearing, "any taxing district may [appear and] object to the ratio or valuation fixed for any other [taxing] district." Ibid. (emphasis added). However, the Board shall not increase any taxing district's ratio or valuation under the equalization table until "after 3 days' notice, [has been given] to the governing body and assessor of the taxing district affected." Ibid.

Once adopted, the final county equalization table "shall be deemed to be the valuation of such property in computing the total ratables of each district for all apportionments of county and State taxes, charges of distribution of moneys. . . ." N.J.S.A. 54:3-19. In sum, the county equalization tables set forth each taxing district's share of the county tax burden. Each taxing district's true or equalized value, "becomes the numerator of the fraction used to calculate the municipality's share of county taxes. The denominator of the fraction is the true value of all real

---

[15] For a county board of taxation participating in the demonstration program, under N.J.S.A. 54:1-104, the hearing must be conducted, and the equalization table adopted and confirmed before May 25, annually. N.J.S.A. 54:3-18.

property in the county." Washington Twp. v. Warren Cty. Tax Adm'r, 19 N.J. Tax 1, 2 (Tax 2000). See also N.J.S.A. 54:3-17 to -19.

Importantly however, when a taxing district has undertaken a municipal-wide revaluation or reassessment, the tax assessments in that taxing district should be at or near true or market value. Thus, "[d]ividing these [tax] assessments by the Director's ratio could produce a distorted equalized valuation for the municipality." Washington Twp., 19 N.J. Tax at 2. Accordingly, the Director developed a computation, known as the "Page 8 formula," to avoid any potential disparities.

The Page 8 formula "substitutes for the Director's ratio a percentage determined by dividing the municipality's aggregate assessments (after the revaluation or reassessment) by the prior year's equalized valuation for the municipality (plus or minus changes in tax ratables from the prior year)." Id. at 2-3. The primary objective of the Page 8 formula is "to produce equalized valuations in the new tax year for revalued [or reassessed] districts which will correspond in method of determination with the equalized valuations for non-revalued [and non-reassessed] districts resulting from use of the Director's ratios as applied to such districts in the ordinary course by county boards." Trenton v. Mercer Cty. Bd. of Taxation, 127 N.J. Super. 588, 594 (App. Div. 1974) (quoting Willingboro Twp., 62 N.J. at 222).

Here, in attempting to calculate Morristown's 2024 tax year county ratio

20

under the Page 8 formula, Morristown's tax assessor included the added assessment levied on the subject property (that was mistakenly included in the added assessment list by Morristown's revaluation company), thus skewing the resulting ratio.

Based on the undisputed facts the court finds that, in or about October 2023, Morristown's revaluation company and tax assessor imposed an added assessment of $20,258,000 on the subject property (including a 10-month prorated added assessment of $16,881,667 for the 2023 tax year).[16] The subject property's added assessment was included on Morristown's added assessment list that was transmitted to the Board. Thus, inclusive of the subject property's added assessment, Morristown's 2023 tax year added assessment list reflected $97,621,900 in total added assessments (and $83,720,133 in prorated added assessments). Morristown's added assessments resulted in an additional $275,439.25 in estimated taxes due from Morristown to Morris County for the 2023 tax year.

On or about January 8, 2024, Morristown's municipal tax assessor submitted a table of aggregates of taxable and exempt property in Morristown for the 2024 tax year. The table of aggregates reflected a total value of land and improvements in

---

[16] On November 29, 2023, the subject property's owner filed a local property tax appeal challenging the 2023 tax year added assessment. The tax appeal complaint argued that the subject property was afforded an exemption under the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to - 22. Accordingly, it maintained that the subject property was exempt from local property tax and therefore, the added assessment must be set aside.

Morristown of $4,784,035,300.

In addition, on or about January 10, 2024, Morristown's municipal tax assessor submitted the completed Page 8 formula, calculating Morristown's ratio for the 2024 tax year as 110.74%. The Page 8 formula reflects an aggregate taxable value of all property in Morristown of $4,784,035,300 (following the revaluation), and a true value of all property in Morristown of $4,142,320,181, as of October 1, 2023 (prior to the revaluation).

Importantly, the Page 8 formula includes $175,169,388.12, representing the equalized value of Morristown's added assessments (which included the subject property's added assessment). The $175,169,388.12 figure was computed by Morristown's tax assessor by dividing the total added assessments of $97,621,900 by Morristown's 55.73% ratio, which is set forth under the Director's Amended Table of Equalized Valuations 2023 ($97,621,900/.5573 = $175,169,388.12).[17] Thus, Morristown's municipal tax assessor allegedly mistakenly included the subject property's 2023 added assessment when completing the Page 8 formula, resulting in an inaccurate average county ratio for the 2024 tax year. The asserted erroneous Page 8 formula determined the net true value of all property in Morristown, as of January 1, 2024, of $4,320,000,769.12, and a new average equalization county ratio of 110.74% (calculated as follows: $4,784,035,300 /

---

[17] See https://www.nj.gov/treasury/taxation/pdf/lptval/2023/allcounties.pdf

$4,320,000,769.12 = 110.74\%$). The 110.74% figure is reflected as Morristown's average ratio on the 2024 final Morris County equalization table.

Thus, Morristown has instituted this action against the Board seeking to adjust its average ratio under the 2024 final Morris County equalization table, by correcting the alleged error in the Page 8 formula calculation. Morristown contends that its correctly calculated county ratio for the 2024 tax year should be 111.68%, not 110.74%.

D. Jurisdiction

The Tax Court is a "court of limited jurisdiction." McMahon v. City of Newark, 195 N.J. 526, 542-543 (2008). The court's "jurisdiction is constrained by the language of its enabling statutes." Prime Accounting Dept., 212 N.J. at 505. The statutory jurisdiction conferred on this court is expressed, in part, as the authority "to review actions or regulations with respect to a tax matter of . . . [a] county Board. . . ." N.J.S.A. 2B:13-2. Similarly, N.J.S.A. 54:51A-1a expresses that "[a]ny party who is dissatisfied with the judgment, action or determination of the county board of taxation may seek review of that judgment, action or determination in the Tax Court by filing a complaint in the Tax Court, pursuant to rules of court." N.J.S.A. 54:51A-1a.

A "strict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government."

23

F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-25 (1985) (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961). Limitations periods that are "applicable to suits against the government are conditions attached to the sovereign's consent to be sued and must be strictly construed." H.B. Acquisitions, Inc. v. Dir., Div. of Taxation, 12 N.J. Tax 60, 65 (Tax 1991). Thus, the failure to comply with the applicable limitations period is "of particular concern in tax matters, given 'the exigencies of taxation and the administration of . . . government.'" Millwork Installation, Inc. v. State Dep't of the Treasury, Div. of Taxation, 25 N.J. Tax 452, 459 (Tax 2010) (quoting F.M.C. Stores Co., 100 N.J. at 424).

Both taxpayers and taxing districts alike are required to "file timely . . . appeals and . . . they are barred from relief if they fail to do so." Hackensack City v. Bergen Cty., 24 N.J. Tax 390, 401 (App. Div. 2009) (quoting Horrobin v. Dir., Div. of Taxation, 1 N.J. Tax 213, 216 (Tax 1979)); Mayfair Holding Corp. v. North Bergen Twp., 4 N.J. Tax 38, 41 (Tax 1982). Hence, the untimely filing of a challenge to a county board of taxation action, determination, or judgment will result in dismissal of the complaint.

The statutory jurisdiction conferred on the Tax Court to review county equalization tables is set forth under N.J.S.A. 54:51A-4a. Importantly, the provisions conferring jurisdiction on the Tax Court are found under the heading of

Chapter 51A, "<u>Appeals to Tax Court</u>" (emphasis added).  The statute provides, in part, that:

> A county equalization table may be reviewed by the tax court on complaint of any taxing district or taxpayer in the county, or on its own motion, but the review shall not suspend the apportionment of moneys or collection of taxes.  No change shall be made in the table except after a hearing in the county, of which 5 days' notice shall be given by mail to the governing body of each taxing district. If, after the hearing, the tax court shall determine that the aggregate valuation of any district or districts as fixed by the county board was erroneous, it shall revise and correct the equalization table, and ascertain the difference between the amount of State and county taxes actually charged against each district in the county or distributed to it and the amount which should have been charged or distributed according to the corrected table and enter judgment accordingly. The difference shall be debited or credited, as the case may be, to each taxing district on account of its share of State and county taxes next due or distributable, as the case may be. The tax court may make all orders necessary to carry out the provisions of this section, but the review shall be completed before September 10, annually.
>
> [N.J.S.A. 54:51A-4a.]

Although N.J.S.A. 54:51A-4a does not identify the period that such challenge must be instituted, our court rules clearly and unambiguously state that "[c]omplaints seeking to review an . . . County Equalization Table . . . <u>shall be filed</u> within 45 days <u>after the adoption or promulgation of the table to be reviewed</u>, subject to the provisions of <u>R.</u> 1:3-3."  <u>R.</u> 8:4-2(a)(1) (emphasis added).

Here, it is undisputed that the Board adopted and promulgated the 2024 final

25

Morris County equalization table on February 15, 2024. On March 28, 2024, Morristown filed its Complaint challenging the 2024 final Morris County equalization table, forty-two days after the 2024 final Morris County equalization table was adopted.

However, the Board urges this court to dismiss Morristown's Complaint and Amended Complaint because "Morristown failed to first timely inform the Morris County Board of its objection to the preliminary county equalization table." The Board contends that Morristown's failure to raise any objection at its hearing on the 2024 preliminary Morris County equalization table "creates a jurisdictional defect, preventing review of the final equitable table by the Tax Court." Moreover, the Board asks the court to interpret the language, under N.J.S.A. 54:51A-4a, stating "[i]f, after the hearing, the tax court shall determine that the aggregate valuation of any district or districts as fixed by the county board was erroneous," as contemplating the county board of taxation equalization table hearing, not the hearing before the Tax Court (emphasis added).

Morristown concedes that its municipal tax assessor did not appear and object to the 2024 preliminary Morris County equalization table. However, Morristown emphasizes that "N.J.S.A. 54:51A-4[a] does not have any requirements with regard to appealing the equalization table at the county board level." Moreover, it asserts that its municipal tax assessor could not raise any challenge to the 2024 preliminary

26

Morris County equalization table on February 15, 2024, because the tax appeal complaint contesting the subject property's added assessment remained pending before the Tax Court. It asserts that it was not until March 27, 2024, that a judgment was entered by the Tax Court confirming that the subject property was exempt from the added assessment and local property tax, and thereafter, it immediately filed this action.

The rules of statutory construction require "consideration of [a statute's] plain language." Merin v. Maglaki, 126 N.J. 430, 435 (1992). See also Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128 (1987); In re Plan for the Abolition of Council on Affordable Hous., 214 N.J. 444, 467-68 (2013). Thus, if based upon a plain reading the statutory language is "clear and unambiguous," the court must "implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202 (1999) (quoting In re Estate of Post, 282 N.J. Super. 59, 72 (App. Div. 1995)).

In the taxation arena, when faced with an issue of statutory construction, the preferred "approach to [interpreting] the meaning of a tax statute is to give to the words used by the Legislature 'their generally accepted meaning, unless another or different meaning is expressly indicated.'" Public Service Electric & Gas Co. v. Woodbridge Twp., 73 N.J. 474, 478 (1977) (quoting New Jersey Power & Light Co.

v. Denville Twp., 80 N.J. Super. 435, 440 (App. Div. 1963)).

The court's review of N.J.S.A. 54:51A-1a, N.J.S.A. 54:51A-4a, and N.J.S.A. 54:51A-5b discloses that the only conditions imposed by our Legislature on a litigant seeking to challenge a county equalization table are: (i) the timely "filing [of] a complaint in the Tax Court"; (ii) a copy of the complaint seeking review of the county equalization table must be served on "the County Board of Taxation and upon the Chief Executive Officer and the Clerk of the Board of Chosen Freeholders of the county and upon the clerk of every taxing district in the county"; (iii) there shall be no suspension of the "apportionment of moneys or collection of taxes" during the pendency of the action; (iv) the Tax Court hearing shall be conducted in the county; (v) 5 days' advance written notice of the hearing "shall be given by mail to the governing body of each taxing district" in the county; and (vi) the hearing shall be conducted and a decision rendered on or before September 10, annually. N.J.S.A. 54:51A-1a; N.J.S.A. 54:51A-4a; N.J.S.A. 54:51A-5b.

In contrast, when our Legislature has sought to impose conditions precedent to imparting subject matter jurisdiction on the Tax Court to either hear an appeal of a county board of taxation decision, action, or judgment, or a local property tax appeal, they have clearly and unequivocally provided for same. For example, under N.J.S.A. 54:51A-1b, our Legislature requires a taxpayer seeking to challenge a county board of taxation judgment to pay "all taxes or any installments thereof then

28

due and payable for the year which review is sought." N.J.S.A. 54:51A-1b. Thus, a taxpayer's failure to pay all taxes then due and owing may result in a lack of jurisdiction and dismissal of the local property tax appeal. See Dover-Chester Assocs. v. Randolph Twp., 419 N.J. Super. 184 (App. Div. 2011); LeCross Associates v. City Partners and Borough of Fort Lee, 168 N.J. Super. 96 (App. Div. 1979); Sun Pipe Line Co. v. Twp. of W. Deptford, 25 N.J. Tax 466 (Tax 2010); Stewart v. Hamilton Twp., 7 N.J. Tax 368 (Tax 1984).

Moreover, our Legislature has expressly provided that "there shall be no review" by the Tax Court of appeals from the county boards of taxation when: (i) the appeal was "withdrawn at the hearing, or previously thereto in writing by the appellant or his agent"; (ii) the appeal was "dismissed because of appellant's failure to prosecute the appeal at a hearing called by the county tax board"; and (iii) an appeal was "settled by mutual consent of the taxpayer and assessor of the taxing district." N.J.S.A. 54:51A-1c; see Ganifas Trust v. Wildwood City, 15 N.J. Tax 722 (App. Div. 1996); West Essex Sav. & Loan Assn'n v. Montville Twp., 16 N.J. Tax 152 (Tax 1996).

Similarly, under N.J.S.A. 54:4-34, our Legislature provided that "[n]o appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days . . . or shall have rendered a false or fraudulent

29

account." N.J.S.A. 54:4-34. Thus, when a taxpayer has failed to timely respond, or provided a fraudulent account, to a municipal tax assessor's request for income and expense information, with respect to an income-producing property, our Legislature has prohibited an appeal thereon, and any challenge is limited solely to the reasonableness of the tax assessment. See Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1 (1988); Waterside Villas Holdings, LLC v. Monroe Twp., 434 N.J. Super. 275 (App. Div. 2014).

Notably, our courts have emphasized that a county board of taxation equalization table hearing, "under N.J.S.A. 54:3-18, is not a judicial proceeding. It is legislative or *quasi*-legislative in nature, not purposed to adjudicate disputes with or among municipalities but solely to enable the county board best to perform its function of securing a fair apportionment of the county tax burden." East Windsor, 89 N.J. Super. at 291 (emphasis added). Thus, when an appeal is taken to the Tax Court of a county board of taxation equalization table, under N.J.S.A. 54:51A-4a, and "an error is shown as to an aggregate of any one of the municipalities, the . . . [Tax Court] . . . should correct the equalization table." Ibid. Of particular importance to this matter, our Appellate Division has stated that the "proceeding before the [Tax Court challenging the county equalization table] is de novo, and a municipality has the same standing to present proofs of error in the county table

30

[before the Tax Court] as it had before the county board." Ibid.[18]

The court finds N.J.S.A. 54:3-18, N.J.S.A. 54:3-19, and N.J.S.A. 54:51A-4a to be plainly written and unambiguous, thus, there is no reason to resort to rules of construction, or extrinsic evidence. "[W]hen the language of a statute is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556 (1979)). "Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience." Witt v. Borough of Maywood, 328 N.J. Super. 432, 443 (Law Div. 1998). However, "[a] court 'may neither rewrite a plainly written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Cashin v. Bello, 223 N.J. 328, 335 (2015) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

---

[18] To the extent that the Board's motion could be viewed as advancing the argument that Morristown failed to exhaust an administrative remedy, and thus, should be precluded from raising claims before the Tax Court, the court finds such argument unavailing. In general, when an administrative remedy is statutorily afforded, it "must be exhausted before resort is had to the courts, but the exhaustion is neither jurisdictional nor absolute. . . ." Matawan v. Monmouth Cty. Bd. of Taxation, 51 N.J. 291, 296 (1968). Here, the county board of taxation's equalization table hearing is a statutorily required "legislative or quasi-legislative" function. East Windsor, 89 N.J. Super. at 291. No administrative remedy to this legislative or quasi-legislative function is afforded under N.J.S.A. 54:3-17, N.J.S.A. 54:3-18, or N.J.S.A. 54:3-19.

Here, Chapter 3 of our statutes annotated bears the heading "County Boards of Taxation," and our Legislature provided that "any taxing district may [appear and] object to the ratio or valuation fixed for any other [taxing] district." N.J.S.A. 54:3-18 (emphasis added). Thus, contrary to the interpretation offered by the Board, the statute neither mandates, nor requires a taxing district to appear at the hearing on the preliminary county equalization table. Under the express language of the statute, the taxing district's appearance is discretionary. Further, the statute provides that only when an objection has been raised to the preliminary equalization table, that a further hearing will be conducted on 3 days' prior written notice to the affected taxing district.

Moreover, under Chapter 3 of our statutes annotated bearing the heading "County Boards of Taxation," our Legislature provided that after the county "equalization table is finally confirmed . . . [a] certified copy of the equalization table shall be transmitted [by the county Board] to . . . each taxing district in the county." N.J.S.A. 54:3-19. Thus, after the county board of taxation performs its legislative or *quasi*-legislative function, it must afford each taxing district written notice that the final county equalization table was adopted, triggering the appeal rights afforded taxing districts and taxpayers under N.J.S.A. 54:51A-4a.

In contrast, Chapter 51A of our statutes annotated bears the heading "Appeals to Tax Court," and thus, governs actions pending before the Tax Court, not the

32

county boards of taxation. N.J.S.A. 54:51A-4a (emphasis added). N.J.S.A. 54:51A-4a unmistakably and unambiguously provides that a "county equalization table may be reviewed by the tax court on complaint of any taxing district or taxpayer in the county" and that "[n]o change shall be made [by the Tax Court] in the table except after a hearing in the county. . . ." N.J.S.A. 54:51A-4a (emphasis added). Thus, the hearing referenced under N.J.S.A. 54:51A-4a, is the Tax Court hearing reviewing the county board of taxation equalization table. The plainly written and unambiguous language of N.J.S.A. 54:51A-4a can lead to no other reasonable interpretation.

Additionally, under N.J.S.A. 54:51A-4a, our Legislature did not impose any conditions on a taxing district or taxpayer's right to challenge a final county equalization table. The only stipulations identified by our Legislature are that the Tax Court's review will not suspend the apportionment or payment of the taxing district's county tax obligation. Moreover, the Legislature required the court's review to be conducted in the county on not less than 5 days' prior written notice to all other taxing districts, and judgment to be rendered thereon by September 10. Nowhere under the statutory scheme did the Legislature require taxing districts to first lodge an objection to a preliminary county equalization table, as a condition precedent to conferring jurisdiction on the Tax Court to review the adopted final county equalization table.

33

The only additional requirement imposed on a taxing district or taxpayer seeking to challenge a county equalization table is memorialized under R. 8:4-2(a)(1). R. 8:4-2(a)(1) provides that a taxing district and taxpayer seeking review of a county equalization table "shall . . . file[] within 45 days after the adoption or promulgation of the table to be reviewed." R. 8:4-2(a)(1) (emphasis added). Thus, our court rules contemplate that the challenge contemplated, under N.J.S.A. 54:51A-4a, is to the adopted or promulgated final county equalization table, and not to an unconfirmed preliminary county equalization table. If challenges were permitted to be instituted in the Tax Court to an unconfirmed preliminary county equalization table, the county boards of taxation would be unable to timely meet the legislative or *quasi*-legislative function imposed on them under N.J.S.A. 54:3-18, to complete and adopt their final county equalization tables before March 10, annually. Had our Legislature intended to restrict appeals of the adoption of final county equalization tables to only those taxing districts and taxpayers that lodged objections to the preliminary county equalization tables, it would have drafted the statute accordingly. However, it chose instead to only require that an appeal be instituted by either a taxing district or a taxpayer within 45 days from the board of taxation's adoption or promulgation of the final county equalization table, and further provided that any such challenge before the Tax Court will not suspend the collection of taxes.

This court will not impute to the Legislature an intent that conflicts with the

34

plain and unambiguous language of N.J.S.A. 54:3-18, N.J.S.A. 54:3-19, and N.J.S.A. 54:51A-4a.  Accordingly, the court finds that the Board's interpretation of the statutes at odds with their explicit terms and meaning.  Therefore, for the above stated reasons, the court finds that the court is vested with subject matter jurisdiction over Morristown's Complaint and Amended Complaint and denies the Board's motion for summary judgment on that issue.[19]

### E.    Arbitrary and capricious standard

The Board further argues that it adopted an average ratio for Morristown for the 2024 tax year identical to the one advanced by Morristown only days prior to the Board's hearing.  Thus, it is "of no moment" that the subject property was found to

---

[19]   The court finds the Board's argument that Morristown's Complaint should be viewed as untimely because it challenged the "Preliminary Equalization Table for the County of Morris for the Year 2024," to be disingenuous.  In its brief and preliminary statement in support of its motion for summary judgment, the Board expressly acknowledged that Morristown raises a "challenge to the final Morris County equalization table" (emphasis added).  On July 19, 2024, the court granted Morristown's motion for leave to amend the Complaint, under R. 8:3-8(a), and ordered that, Morristown's Amended Complaint shall relate back to the date of the Complaint, under R. 4:9-3 and R. 8:3-8(c)(1).  Morristown's Amended Complaint challenges the 2024 final Morris County equalization table.  R. 4:9-3 provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading[.]"  R. 4:9-3.  R. 4:9-3 shall be liberally construed, "[w]here the amendment constitutes the same matter more fully or differently laid, or the gist of the action or the basic subject of the controversy remains the same, it should be readily allowed, and the doctrine of relation back applied."  Harr v. Allstate Ins. Co., 54 N.J. 287, 299-300 (1969); see also Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490 (2006); Prime Accounting Dept., 212 N.J. at 512.

be exempt from the added assessment that was included in Morristown's added assessment list and the calculation of Morristown's average ratio for 2024 under its Page 8 formula. In sum, the Board asserts that Morristown is unable to demonstrate that the Board's adoption of the 2024 final Morris County equalization table was arbitrary and capricious, and thus, maintains that summary judgment should be granted in its favor.

In response Morristown asserts that the 2024 final Morris County equalization table and its average ratio set forth thereunder is "incorrect and plainly unjust" because the subject property's $20,258,000 added assessment was set aside. According to Morristown, the "revaluation company mistakenly issued an [added] assessment to the subject property despite the fact that the Financial Agreement [affording the subject property an exemption under the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22] was already in place." Morristown argues that because of this error, it will be charged with an additional $674,119.02 in county tax obligations. Accordingly, because the 2024 final Morris County equalization table is incorrect, Morristown maintains that it must be adjusted by the court.

It is undisputed that "county equalization tables have been upheld by our courts unless the average ratio is arbitrary, capricious, or unreasonable." Washington Twp., 19 N.J. Tax at 7. However, when a timely challenge has been initiated to a county board of taxation's equalization table, the Tax Court's "function

36

is the same as that of the county board.  Upon a showing 'merely of error by the county board as to the aggregate of any one of the taxing districts' the [Tax Court] must undertake the task of revising and correcting the table." Carteret, 40 N.J. Super. at 447-448 (quoting Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. at 394)).  "When an appeal is taken to the [Tax Court] from the county table and an error is shown as to an aggregate of any one of the municipalities, the [Tax Court], like the county board, should correct the equalization table." East Windsor, 89 N.J. Super. at 291.

The court does not read our state's body of jurisprudence so narrowly as to require a taxing district prove that the adoption of the county equalization table was arbitrary or capricious to warrant all forms of relief.  Rather, this court has revised county equalization tables when it has been shown that the ratio is either "unreasonable" or "incorrect or plainly unjust and that there has been imposed on it a 'dramatically or substantially excessive' share of the county tax burden." Twp. of Jefferson v. Dir., Div. of Taxation, 427 N.J. Super. 347, 352 (App. Div. 2012). Moreover, our Appellate Division has expressed that when conducting a review of the county equalization tables, the trial court must ensure that principles of "[e]lementary fairness, as well as the assurance of apportionment of the county tax burden [is undertaken] in a manner [that is] as nearly accurate as possible. . . ." Trenton v. Mercer Cty. Bd. of Taxation, 127 N.J. Super. at 593.

Importantly, the determination of whether the adoption of the 2024 final

Morris County equalization table is arbitrary and capricious, or whether the table is unreasonable, incorrect, or plainly unjust, and impresses upon Morristown a substantially excessive share of the county tax burden, is a disputed material fact. To resolve this disputed fact, the court must take testimony and apply determinations of credibility. Accordingly, for these reasons, the court denies the Board's motion for summary judgment on that issue.

## III. Conclusion

For the above stated reasons, the court denies the Board's motion for summary judgment.